UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KATHLEEN MARTIN,

                                 No. 05-6176-MO

               Plaintiff,

                              OPINION AND ORDER

     v.

JO ANNE B. BARNHART,
Commissioner of Social Security

               Defendant.

**MOSMAN, J.,**

Plaintiff Kathleen Martin seeks judicial review of the Commissioner of the Social Security Administration's ("SSA") final decision that she is not disabled and therefore ineligible for social security disability benefits ("SSDI"). Ms. Martin argues the Administrative Law Judge ("ALJ") erred by: (1) rejecting the opinion of her treating physician, (2) improperly assessing her personal testimony, and (3) improperly assessing the testimony of her lay witness. This court has jurisdiction under 42 U.S.C. § 405(g).

Ms. Martin applied for SSDI on May 1, 2001, claiming disability as of October 6, 2000. In her application for benefits, the conditions limiting her ability to work were identified as: (1) diabetic retinopathy, (2) diabetic neuropathy, and (3) chronic anemia. Transcript ("Tr.") at 84. She claimed these conditions diminished her ability to see clearly and reduced her peripheral vision. As a result, she was unable to read computer screens. *Id.* Her application was denied initially and upon reconsideration. *Id.* at 48-57. The ALJ considered evidence from treating and

non-treating physicians, a vocational expert ("VE"), and Mr. and Ms. Martin. Ultimately, the

ALJ decided Ms. Martin was not disabled, which became final after the Appeals Council denied

review. *Id*. at 8-12. For the reasons set forth below, the final decision of the Commissioner is

AFFIRMED.

## I.    Factual Background

Ms. Martin was 52 years of age at the onset of her claimed disability. Her work history

includes employment as a medical receptionist from 1986 to 1994 and as a department store

distribution center clerk from 1996 to 2000. She stopped working in October of 2000.

### A.    Medical Evidence

Ms. Martin suffers from various mental and physical ailments, the most problematic of

which is diabetes, resulting in limited vision and numbness in her feet. She is medically obese,

and her history of compulsive overeating and depression causes difficulty in managing her

diabetes.

Ms. Martin's medical record begins in 1999, with an examination by Diane Conrad, a

psychiatric mental health nurse practitioner. Ms. Conrad reported a history of obesity,

depression, diabetes with neuropathy, low self image, compulsive eating and spending, and other

obsessive compulsive behaviors. Tr. at 374. She diagnosed Ms. Martin with recurrent, Major

Depression of a moderate degree without psychotic features, Obsessive-Compulsive Personality

Disorder, and prescribed Celexa. *Id*.

Ms. Martin saw Dr. Wolfe, her primary ophthalmologist, three times in 1999. She

reported using her glasses more frequently, the existence of floaters in her left eye, and five

episodes of visual disturbances, lasting up to seven hours. *Id*. at 455, 600, 601.

In May 2000, Ms. Martin visited an orthopedic surgeon, Dr. Anderson, for hip pain. She was diagnosed with probable vastus lateralis tendonitis and prescribed therapy and Relafen. *Id*. at 375.

In August 2000, Ms. Martin described herself to psychiatrist Dr. Jacobsen as a compulsive overeater and spender, expecting her overeating to cause her to quit working someday. *Id*. at 592. Dr. Jacobson diagnosed Ms. Martin with recurrent, Major Depressive Disorder of a severe degree, without psychotic features, and Borderline Personality Organization.[1] *Id*. at 590. Dr. Jacobson concluded that some of Ms. Martin's impulsive activities, such as overeating, aggravate and may have caused her chronic illnesses. *Id*. at 377. He suggested that her Major Depressive Disorder is also exacerbated by these habits. *Id*. However, he found her depression to be well treated. *Id*.

In September 2000, Dr. Simpson, Ms. Martin's regular physician, treated her for poorly managed diabetes. Ms. Martin admitted that she was not checking her blood sugars regularly. Dr. Simpson reported an increase in depression and neuropathy. *Id*. at 449.

In September 2000, Ms. Martin informed Dr. Wolfe, her primary ophthalmologist, that her diabetes was not well managed and her vision was foggy. *Id*. at 599. Dr. Wolfe diagnosed Ms. Martin with diabetic retinopathy, but noted that at least some of her vision impairment was unsupported by clinical findings. *Id*. at 405.

In October 2000, Ms. Martin told Dr. Wolfe that she did not want to work because she could not read the computer screens and paperwork. *Id*. at 413, 932. Although she asked him to fill out a disability form, the form was never completed. *Id*. at 932. Ms. Martin testified that

---

[1] Borderline personality organization is a feature of borderline personality disorder.

PAGE 3 - OPINION AND ORDER

Dr. Wolfe expected her vision to improve after laser surgery scheduled for December 2000.  *Id*.

In October 2000, Ms. Martin reported difficulty managing her diabetes and binge eating to Dr. Simpson.  *Id*. at 400.  Dr. Simpson diagnosed Ms. Martin with anemia.  *Id*. at 448.

In December 2000, she received laser surgery on her left eye from Dr. Wolfe.  *Id*. at 410. In January of 2001 she reported cloudy vision and a decrease in her peripheral vision.  *Id*.  at 408. Dr. Wolfe referred her to Dr. Klein,  an ophthalmologist specializing in low vision.  *Id*.

In February 2001, Dr. Klein, tested Ms. Martin for macular edema and ischemia.  *Id*. at 384.  The tests did not show evidence of macular edema, but incomplete data prevented a determination on the existence of ischemia.  *Id*.  Without further test results, Dr. Klein was unable to fully assess Ms. Martin's vision deficits.  *Id*. at 383-84.

In April 2001, Ms. Martin told Dr. Wolfe that her vision prevented her from working on computers.  *Id*. at 404.  That month, Dr. Wolfe completed a disability questionnaire and indicated Ms. Martin's complaints of decreased vision were greater than clinical findings indicated.

 In June 2001, Ms. Martin experienced her first incident of swelling and numbness in her left arm and face.  *Id*. at 439.  This was diagnosed as a stroke or stroke symptom.  *Id*.  She was also diagnosed with hypertension and untreated cholesterol.  *Id*. at 438.  In July and August 2001, Ms. Martin continued to report pain in her left leg and numbness in the left side of her face.  *Id*. at 436-37.

In July 2001, Dr. Jacobson diagnosed Ms. Martin with Major Depressive Disorder and Borderline Personality Disorder.  *Id*. at 586-87.

In August 2001, an internist, Dr. Irwin examined Ms. Martin for the SSA.  Dr. Irwin reported a progression of peripheral neuropathy into the front two-thirds of her foot, but did not

find her activity to be limited by the progression.  Dr. Irwin found Ms. Martin's left foot was weaker than her right and she had decreased sensitivity in the left side of her face.  *Id*. at 390.

In September 2001, Dr. Gradin, an ophthalmologist, evaluated Ms. Martin and detected reduced color vision and evidence of a lacunar infarction.  *Id*. at 414.  However, the infarction did not explain all of Ms. Martin's limited vision.  Dr. Gradin suggested that diabetic retinopathy may be the cause.  *Id*.

In November 2001, Ms. Martin saw Dr. Anderson for hip and leg pain.  Dr. Anderson diagnosed chronic trochanteric tendonitis, bursitis, and limited hip motion.  *Id*. at 429.  He expected the symptoms to continue.

In January 2002, Dr. Simpson treated Ms. Martin for shoulder pain, foot pain, and unsteady balance.  *Id*. at 652.  Her diagnosis included persistent balance problems, fibromyalgia, and foot pain most likely caused by sesamoiditis.  *Id*.  Dr. Simpson referred Ms. Martin to a neurologist to evaluate her balance problem.

Ms. Martin saw Dr. Simpson again in May 2002 and reported a failure to manage her diabetes through diet and exercise, feelings of apathy, and lack of control.  Dr. Simpson's records contain notes of severe depression and possible Bipolar Disorder.  *Id*. at 647-48.

In May 2002, an SSA medical consultant performed a functional capacity assessment and determined that Ms. Martin's vision allegations were "totally credible."  *Id*. at 549.

In August 2002, Dr. Cornelius, a podiatrist, treated Ms. Martin for her continued foot problems and noted a slight progression in her peripheral neuropathy.  *Id*. at 643.

In September 2002, when Ms. Martin reported for her annual physical, Dr. Simpson noted an increase in fibromyalgia symptoms.  *Id*. at 639.

PAGE 5 - OPINION AND ORDER

In January 2003, Ms. Martin's foot numbness and balance problems were evaluated by Dr. Keller, a neurologist. *Id*. at 611. Dr. Keller performed an electroencephalogram, computerized tomography scan, and physical examination. *Id*. at 610, 674-75. Dr. Keller found Ms. Martin to be neurologically stable with normal strength and gait. *Id*. at 611-12. She informed Ms. Martin that her balance is related to her diabetic neuropathy and it is important to manage her diabetes. *Id*. at 612.

In May 2003, Ms. Martin reported blurred vision and decreased depth perception to Dr. Wolfe. *Id*. at 883. She explained the need to use a magnifying glass to read and her inability to drive at night. *Id*.

In May of 2003, Ms. Martin experienced a second incident of numbness in her left arm and face. *Id*. at 675. The event was determined to be a transient ischemic attack ("TIA") leaving residual weakness in the left side of her body. *Id*. at 703.

In September 2003, Dr. Ude, a psychologist, examined Ms. Martin. Dr. Ude diagnosed Major Depressive Disorder in partial remission, Impulse Control Disorder, Caffeine Induced Disorder, and Histrionic Personality Traits. *Id*. at 793.

In December 2003, Dr. Simpson wrote a letter to Ms. Martin's attorney stating her belief that Ms. Martin is disabled. *Id*. at 745. The letter reads:

> I believe that [Ms. Martin] does fit within the category of disability due to diabetes.
> She has significant neuropathy with paraesthesias [sic] and ataxia. The ataxia has caused her to have trouble with frequent falling. She also has some left-sided body weakness and numbness with a visual field defect after a stroke. She suffers from anopsia in her left upper quadrant which is thought to be secondary to a lacunar infarct at the external capsule level of the right optic radiation.

*Id.* Each of these conditions described by Dr. Simpson relates to Ms. Martin's vision and balance impairments and is attributable to her diabetes or ischemic events.

In January 2004, Dr. Keller found her neurologic examination to be normal with some evidence of neuropathy. *Id.* at 781.

In June 2004, a specialist in physical medicine, Dr. Rung, diagnosed fibromyalgia, noting 12 out of 18 tender fibromyalgia points. *Id.* at 880.

**B.      Ms. Martin's Testimony**

Ms. Martin testified that diminished eyesight caused her to quit working because she was unable to read computer screens and office paperwork. *Id.* at 915. She explained that her eyesight forces her to drive only during the day. *Id.* Ms. Martin enjoys sewing, but her vision limits her to approximately one hour a week, and her husband threads her needles. *Id.* at 920-21. She reported watching television and spending minimal time on the computer; up to thirty minutes in one day. *Id.* at 918.

Ms. Martin testified that she experiences constant numbness in at least half of both feet. *Id.* at 925. This causes her to stumble approximately three times per day. *Id.* As her balance has recently improved, she reported falling less frequently. Instead of falling weekly, she had not fallen in the month prior to the hearing. *Id.* at 926. She explained that two TIA events caused weakness in her left leg and residual numbness in the left side of her face. *Id.* at 930. She becomes easily fatigued as a result, forcing her to take naps during the day. *Id.* Ms. Martin also described her struggle with sleep apnea and adhesive capsulitis in her shoulders. *Id.* at 933. She claims her shoulders hurt all the time. *Id.* Because of her physical limitations, she shares the household duties with her husband, including cooking, cleaning and grocery shopping. *Id.* at

PAGE 7 - OPINION AND ORDER

917-18.

### C. Mr. Martin's Testimony

Mr. Martin wrote a letter to the ALJ explaining his wife's decreased vision since 2000. *Id*. at 142. He described her trouble reading labels, threading needles, and driving. *Id*. The letter addressed Ms. Martin's balance problems and her need of help with steps and curbs. *Id*. Finally, Mr. Martin explained that Ms. Martin tired easily when performing household chores, which they do together. *Id*.

## II. Standards

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner uses a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. In step one, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). In step two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). In step three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a

number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond step three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a); s*ee also* Social Security Ruling ("SSR") 96-8p. In step four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e). If the Commissioner reaches step five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-42; s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

## II.    The ALJ's Decision

In considering the medical evidence and testimony provided at the hearing, the ALJ performed the five-step evaluation required by 20 C.F.R. § 404.1520. The ALJ did not adopt

Dr. Simpson's legal conclusion that Ms. Martin is disabled.  The ALJ also discounted the testimonies of Mr. and Ms. Martin for lacking credibility.  *Id*. at 27.

At step one, the ALJ found Ms. Martin had not engaged in substantial gainful activity since the alleged onset of her disability in October 2000.  *Id*. at 28.

At step two, the ALJ found the following disorders to be severe, but not disabling: diabetes mellitus with retinopathy and neuropathy, visual disorder with 20/40 eyesight, limited peripheral vision, fibromyalgia, and cerebral vascular disorder.  *Id*. at 28.  Ms. Martin challenges this finding and contends that Borderline Personality Disorder is also a severe impairment, as it prevents her from managing her diabetes properly.

At step three, the ALJ did not find Ms. Martin's disorders to meet the requirements for impairment under 20 C.F.R. § 416.920(c).  *Id*. at 28.  A non-examining physician, Dr. Williams, considered the medical evidence and testimony from the hearing and found Ms. Martin was not disabled under SSA standards.  *Id*. at 935.  He testified that the record supported diagnoses of diabetes mellitus with peripheral neuropathy and optical retinopathy, sleep apnea, hypertension, cerebrovascular accident with residual weakness, hyperthyroidism, fibromyalgia, and an atypical shoulder capsulitis.  *Id*. at 935.  With these conditions, Dr. Williams determined that Ms. Martin can perform light work in a nonhazardous area.  *Id*. at 936-37.  Dr. Williams cautioned that Ms. Martin should avoid stairs and uneven surfaces.  *Id*. at 937.  He also suggested that working on computers would be difficult.  *Id*.

The ALJ determined that Ms. Martin retained the RFC for light work.  Taking account of vision and balance limitations, the ALJ included a restriction from jobs requiring good color vision or full visual fields, crouching, crawling, kneeling, the use of ladders, and overhead work.

*Id*. Ms. Martin challenges this finding and asserts that Dr. Simpson's opinion on the issue of disability precludes a determination that she can perform work.

At step four, the ALJ determined that Ms. Martin's capacity for work included her past relevant positions as a receptionist and clerk. At the administrative hearing, a VE was presented with a hypothetical that included Ms. Martin's need to avoid stairs and uneven surfaces, as well as limited visual fields and diminished color vision. *Id*. at 950. In response, the VE testified that given these limitations, Ms. Martin is capable of performing a position similar to her previous job at Target as a distribution center clerk. *Id*. at 952. He believed that she is also fit to work in a receptionist position that does not require extensive computer use. *Id*. When computers are required, the ability to enlarge the font should help her to work efficiently. This final determination at step four is in dispute. As in step three, Ms. Martin claims Dr. Simpson's opinion on the issue of disability prohibits a finding that she can return to her previous jobs.

With the conclusion that Ms. Martin is able to work in her past positions, the ALJ did not pursue step five of the evaluation.

## IV.    Discussion

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.

1986).  The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and

if the evidence can support either outcome, the court may not substitute its judgment for that of

the Commissioner.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).  However, even if the

Commissioner's decision is supported by substantial evidence, it must be set aside if the proper

legal standards were not applied in weighing the evidence and in making the decision.  *Gonzalez*

*v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Ms. Martin contends the ALJ erred by (1) rejecting the opinion of treating physician, Dr.

Simpson, (2) improperly discounting her personal testimony and (3) improperly discounting the

testimony of her lay witness.  The Commissioner asserts the impairments do not meet the criteria

for disability.

### A.    Opinion of a Treating Physician

A treating physician's opinion is given controlling weight if it is well-supported by

medically acceptable techniques and is consistent with other substantial evidence in the record.

*Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(2).

However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of

an impairment or the ultimate determination of disability."  *Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal quotations and citation omitted).  A

treating physician's uncontradicted opinion on disability can be rejected only with clear and

convincing reasons.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).   An opinion on

disability, even if controverted, may only be rejected with specific and legitimate reasons

supported by substantial evidence in the record.  *Id*.  This burden is met by thoroughly outlining

the facts and conflicting clinical evidence, stating interpretations, and making findings.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

      **1.**      **Omission of Dr. Simpson's Opinion**

      Ms. Martin asserts the ALJ did not apply the proper legal standards in weighing

Dr. Simpson's opinion as a treating physician.  Ms. Martin specifically notes the ALJ incorrectly

failed to mention Dr. Simpson's opinion that Ms. Martin is disabled, and failed to provide

sufficient reasons for rejection.

      In a letter dated December 5, 2003, Dr. Simpson stated that she believed Ms. Martin to be

disabled.  *Id*. at 745.  The letter is best evaluated in two parts.  The opening paragraph states a

legal conclusion that Ms. Martin "fit[s] within the category of disability due to diabetes."  *Id*.

The second paragraph lists several of Ms. Martin's medical limitations.  *Id*.  The specific

conditions listed in the second paragraph of the letter are: (1) neuropathy, (2) parethesia, (3)

ataxia, and (4) anopsia.  *Id*.  Each of these conditions relate to balance and vision impairments,

attributable to Ms. Martin's diabetes or ischemic events.  These conditions were properly

considered and adopted by the ALJ.  Ms. Martin's neuropathy and visual impairments were

accepted as severe impairments in the ALJ's findings.  *Id*. at 28.  However, the first paragraph of

Dr. Simpson's letter, which includes the opinion that Ms. Martin is disabled, was not mentioned

in the decision.  Instead, the ALJ overlooked Dr. Simpson's opinion when he incorrectly stated,

"her treating and examining physicians decline to find her significantly impaired, much less

'disabled.'"  *Id*. at 26.

      Although Dr. Simpson is a treating physician, this opinion is not entitled to full weight

because it is inconsistent with other evidence in the record and took the form of an improper

administrative finding.  20 C.F.R. 416.927(d)(2); SSR 96-5p.  Disability has both a medical and

vocational component.  *See* 20 C.F.R. § 416.960.  Statements about the issue of disability are

vocational determinations.  SSR 96-5p.  Because medical sources do not have the expertise to

determine the vocational component of disability, a statement of disability by a physician is not

accorded much weight.  *See* 20 C.F.R. § 416.927(e)(1).  However, opinions from medical sources

"must never be ignored."  SSR 96-5p.  The court treats a physician's medical opinion regarding

the ultimate issue of disability in the same manner as an opinion concerning physical condition.

*Rodriguez v. Bowen*, 876 F.2d 759, 762 n.7 (9th Cir. 1989).  Thus, the ALJ could reject

Dr. Simpson's opinion for specific and legitimate reasons.

By failing to discuss Dr. Simpson's opinion, the ALJ did not apply the proper legal

standard.  SSR 96-5p.  However, the ALJ's outline of the evidence, interpretation, and ultimate

findings established substantial evidence in the record to support the determination that

Ms. Martin is not disabled.

As the evidence regarding Ms. Martin's vision, balance, and mental disorders is varied,

the ALJ discussed several inconsistencies.  With respect to her vision, the ALJ inferred that

Dr. Wolfe did not believe Ms. Martin to be disabled.  Tr. at 21.  Dr. Wolfe reported that at least

some of Ms. Martin's vision impairment is unsupported by clinical findings.  *Id*. at 405.  The

ALJ noted that Dr. Wolfe's decision not to fill out disability forms at Ms. Martin's request

indicates that he "did not endorse disability."  *Id*. at 21.  The Commissioner cites a Seventh

Circuit case supporting the ALJ's conclusion.  In *Scott v. Sullivan*, the ALJ properly drew a

negative inference on the issue of disability from a treating physician's refusal to substantiate a

patient's disability claim.  898 F.2d 509, 523 (7th Cir. 1990).

The lack of clinical findings by Dr. Wolfe is partially corroborated by Dr. Klein, who

tested Ms. Martin's vision.  Despite a partial technical failure in the testing, he determined that macular edema did not exist.  A subsequent MRI performed by Dr. Gradin revealed the lacunar infarction referenced in Dr. Simpson's letter.  *Id*. at 414.  Dr. Gradin opined the infarction was related to Ms. Martin's anopsia, but did not discover additional clinical evidence of Ms. Martin's visual impairments.  He suggested that diabetic retinopathy may be the cause of her diminished vision.  *Id*.

Ms. Martin's neuropathy and unstable balance is primarily attributed to her diabetes and TIAs, resulting in frequent stumbles and falls.  *Id*. at 612.  However, her neurologist, Dr. Keller, repeatedly found her to be stable and well treated.  Dr. Keller reported that Ms. Martin did not have vibratory sense up to her ankles and had lost position sense, but still maintained a normal gait.  *Id*.  In an evaluation in January 2004, Dr. Keller found evidence of peripheral neuropathy, but ultimately found Ms. Martin was neurologically intact and stable on her current medication. *Id*. at 781.

Ms. Martin's mental health physicians collectively diagnosed Ms. Martin with Major Depressive Disorder, Borderline Personality Disorder, Impulse Control Disorder, Caffeine Induced Disorder, and Histrionic Personality Traits, but their records do not refer to her as disabled.  *Id*. at 590, 793.  Ms. Martin claims that Borderline Personality Disorder should qualify as a severe impairment, as it prevents her from managing her diabetes properly.  This is supported by Dr. Jacobson's report that Ms. Martin's diabetes and other health problems are aggravated by her mental conditions.  *Id*. at 377.  At the same time, he noted that Ms. Martin seemed to be well treated and stable on her medication.  *Id*.  The ALJ discussed and considered the mental health conditions of Ms. Martin, but did not find any mental disorders to be severe.

PAGE 15 - OPINION AND ORDER

*Id.* at 28.

The ALJ also relied upon Dr. Williams, a non-examining physician, who found Ms. Martin was not disabled under SSA standards. *Id*. at 25. A non-examining physician's opinion may amount to substantial evidence, if supported by other evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Williams noted that Ms. Martin has numerous medical problems, some of which are exacerbated by her failure to follow prescribed treatment and monitor her diabetes. *Id*. at 22-23. Her compulsive overeating, major Depressive Disorder, and Borderline Personality Disorder play a role in diabetes maintenance. However, these conditions can be managed, as well as her diabetes. Dr. Williams suggested that Ms. Martin can perform light work and is able to remain on her feet for up to six hours per day. She should avoid workplace hazards, including stairs and uneven surfaces. *Id*. at 936-37. Dr. Williams also noted that working on computers may be difficult. *Id*. at 937. With these limitations, he found Ms. Martin suitable for work.

The final inconsistency with Dr. Simpson's opinion is found in Ms. Martin's daily activities. She sews, walks three times a week, shops for groceries, and performs moderate household chores with her husband. *Id*. at 27. It is recognized that many home activities are not easily transferable to a work environment, where it is more difficult to rest or take medication. *See Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). For example, Ms. Martin reported a need to nap during the day because she becomes easily fatigued. Still, it is appropriate for the ALJ to weigh these factors.

The ALJ considered and accounted for all of Dr. Simpson's medical opinions found in her medical records and the December 5, 2003 letter. Dr. Simpson's only opinion not credited by the

ALJ was the legal conclusion on disability, which by its nature, is not entitled to full weight.

### 2.    Test for an Award of Benefits or Further Proceedings

The decision whether to remand for further proceedings or simply to award benefits is within the court's discretion. *Rodriguez*, 876 F.2d at 763. Remand for further administrative proceedings "is appropriate where additional administrative proceedings could remedy defects; but where remand would only delay the receipt of benefits, judgment for the claimant is appropriate." *Id.* (internal quotation marks and citations omitted). Courts generally award benefits "when no useful purpose would be served by further administrative proceedings" or "when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Id.*

Application of the *Smolen* test confirms that remand for benefits is not warranted. Under this standard, a remand for benefits is appropriate when: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find [the claimant] disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The first element of this test is not satisfied, as the record is not fully developed. The outline of medical evidence is sufficient to satisfy the burden of specific and legitimate reasons for rejection of Dr. Simpson's opinion, but an actual discussion of the opinion is missing from the record.

The second criteria is met, as there are no outstanding issues to address before disability

PAGE 17 - OPINION AND ORDER

can be determined.  The underlying impairments listed in Dr. Simpson's letter were considered by

the ALJ in determining whether a disability existed.  During the administrative hearing, the VE

was presented with hypothetical questions that accounted for Ms. Martin's balance and visual

impairments.  After considering these limitations, the VE found that Ms. Martin could perform

light work.  *Id*. at 950-58.  Because the underlying medical impairments reported by Dr. Simpson

were considered, and even accepted, her opinion on disability would not add any new

information for consideration.

Finally, to remand for an award of benefits, it must be clear that the claimant is disabled.

*Ramirez*, 8 F.3d at 1455 (remanded for an award of benefits because substantial evidence did not

support the ALJ's decision that claimant was not disabled); *accord Hoffman v. Heckler*, 785 F.2d

1423, 1425 (9th Cir. 1986).  Here, crediting Dr. Simpson's opinion as true would not require a

finding of disability.  Dr. Simpson's conclusion is of a medical nature, while the ultimate

determination of disability is a legal decision.  Furthermore, the opinion is inconsistent with the

record as a whole, including the opinion of Dr. Wolfe.  It is up to the ALJ to weigh this

conflicting evidence and reach a conclusion.  Here, after evaluating all of the medical records and

testimony, crediting this medical finding would not change the ultimate determination.  The

finding that Ms. Martin is not disabled is supported by substantial evidence in the record.

Therefore, under this test, remand for an award of benefits is not appropriate.

The alternative remedy of remanding for further administrative proceedings is similarly

inappropriate in this case.  Additional proceedings will only serve to lengthen the judicial process

without impacting the ultimate outcome.  The ALJ credited the medical opinions that were

entitled to weight and reached a conclusion supported by substantial evidence in the record.

Further proceedings addressing an opinion not entitled to weight would not serve the interests of Ms. Martin or judicial economy.  Ultimately, Ms. Martin was correctly found not disabled, and the ALJ's treatment of Dr. Simpson's opinion is upheld.

**B.    Plaintiff's Testimony**

A claimant must establish a severe impairment and a causal link between that impairment and her symptoms.  Then, absent any evidence of malingering, the ALJ may reject the claim only by providing clear and convincing reasons, supported by substantial evidence.  *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ must identify the testimony that is lacking credibility and explain how it is undermined by other substantial evidence.  *Holohan,* 246 F.3d at 1208.  In determining credibility, the ALJ may apply traditional techniques such as assessing the claimant's reputation for truthfulness and inconsistent testimonial statements, in addition to daily activities and medical evidence that discount the severity of the claims.  *Tonapetyan,* 242 F.3d at 1148; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ did not find Ms. Martin's testimony to be credible and outlined four factors contributing to the determination: (1) a lack of evidence to prove vision impairment, (2) unreliability in statements regarding disabilities, (3) noncompliance with treatment, and (4) routine activities that indicate an ability to work. Tr. at 26-27.

First, Ms. Martin's primary reason for not working is limited vision.  The ALJ found this claim to be unsupported by treating physicians Dr. Wolfe and Dr. Klein who could not identify medical evidence to support her impairment.  *Id*. at 25-26.  The ALJ also noted Ms. Martin's statements to Dr. Wolfe and Dr. Jacobsen regarding her disability.  To Dr. Wolfe, she indicated

that she no longer wanted to work because of her eyesight. *Id*. at 27. She expressed to

Dr. Jacobsen that she knew her over-eating would eventually cause her to stop working. *Id*. The

ALJ interpreted these statements as evidence that Ms. Martin is using her health problems "as a

means of avoiding return to work." *Id*. at 27.

Second, the ALJ found Ms. Martin's description of symptoms to be inconsistent,

specifically noting that she reported her stroke as occurring in September on one occasion and

July on another occasion. The ALJ also cites an inconsistency found in a medical record from

Good Samaritan Hospital, where Ms. Martin underwent a colonoscopic evaluation. Ms. Martin

denied any vision change and musculoskeletal pain, despite recent visits to doctors regarding

those issues. *See id*. at 669. This medical record is inconsistent with her other records and

testimony.

Third, the ALJ found Ms. Martin's compliance with treatment to be inadequate. When

Ms. Martin follows the appropriate diet, her diabetes is well managed and fewer health problems

occur. However, it should be noted that Ms. Martin's Borderline Personality Disorder, Bipolar

Disorder, and Major Depressive Disorder present obstacles to following a consistent treatment

regimen. Ms. Martin takes medication for these disorders, keeping them well managed. *Id*. at

377. The ALJ did not find her mental disorders to be a significant impairment.

Fourth, Ms. Martin's daily activities were found inconsistent with her claimed disability.

While she is unable to read computer screens, she watches television and sews. Ms. Martin

testified that she sews for about one hour per week, but has trouble threading needles. *Id*. at 916,

920. Ms. Martin claims that she experiences numbness in her feet, causing her to stumble on a

daily basis, sometimes falling. However, she now falls less than in the past. *Id*. at 925. She is

PAGE 20 - OPINION AND ORDER

able to walk her dog three to four times a week for approximately one-half mile. *Id*. at 119. She performs household chores, shops for groceries, and drives her car during the day.

The ALJ found these inconsistencies to be clear and convincing evidence of diminished credibility, therefore discounting Ms. Martin's testimony. By identifying and explaining each of these factors, the appropriate legal standard was applied and Ms. Martin's testimony was properly discounted.

### C.      Lay Witness Testimony

Testimony by family members about the claimant's symptoms and activities must be considered by the ALJ as non-medical evidence. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(e)(2). To discount the testimony of a lay witness, the ALJ must provide reasons that are germane to the witness. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (contradiction by medical evidence is legitimate reason for rejecting lay opinion); *Dodrill*, 12 F.3d at 919 (the claimant's credibility should not determine the credibility of the witness).

Here, the ALJ discounted the letter written by Ms. Martin's husband for lack of credibility. As with Ms. Martin's testimony, the ALJ doubted her husband's testimony because (1) the lack of evidence relating to vision problems, (2) inconsistent statements by Ms. Martin, (3) noncompliance with treatment, and (4) daily activities that are not indicative of disability. Tr. at 26. While inconsistent statements by Ms. Martin reflect on her own credibility, they should not be considered in assessing the credibility of others. The other factors however, are objective and provide clear and convincing evidence, supported by substantial evidence in the record, to discount Mr. Martin's opinion.

PAGE 21 - OPINION AND ORDER

**V.    Conclusion**

The ALJ's determination that Ms. Martin is not disabled is supported by substantial evidence in the record.  In reaching this conclusion, proper weight was afforded to all valid medical opinions and testimony.  Therefore, the final decision of the Commissioner is AFFIRMED.


DATED this   18th   day of July, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court